**KALIEL PLLC**
Jeffrey D. Kaliel (CA Bar No. 238293)
jkaliel@kalielpllc.com
Sophia Goren Gold (CA Bar No. 307971)
sgold@kalielpllc.com
1875 Connecticut Ave., NW, 10th Floor
Washington, D.C. 20009
Telephone: (202) 350-4783

**KOPELOWITZ OSTROW**
**FERGUSON WEISELBERG GILBERT**
Jeff Ostrow (*pro hac vice* to be filed)
ostrow@kolawyers.com
Scott Edelsberg (*pro hac vice* to be filed)
edelsberg@kolawyers.com
One West Las Olas Blvd., Suite 500
Fort Lauderdale, Florida 33301
Telephone: (954) 525-4100

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RUTH STINSON, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> BRANDSOURCE, INC., <br><br> Defendant. | Case No. \_\_\_\_ <br><br> **CLASS ACTION COMPLAINT** <br> **JURY TRIAL DEMANDED** <br><br> 1. Violation of the "Unfair" Prong of the UCL <br> 2. Violation of the "Fraudulent" Prong of the UCL; <br> 3. Violation of the "Unlawful" Prong of the UCL; <br> 4. Violation of the California False Advertising Law, California Business & Professions Code Section 17500, *et seq.*; <br> 5. Violation of the Consumers Legal Remedies Act, California Civil Code Section 1750, *et seq.*; <br> 6. Unjust Enrichment on Behalf of the Classes. |

# CLASS ACTION COMPLAINT

Plaintiff, RUTH STINSON ("Plaintiff"), on behalf of herself and all others similarly situated, allege the following based upon personal knowledge as to allegations regarding Plaintiff and on information and belief as to other allegations:

## INTRODUCTION

1. This is a civil action seeking monetary damages, restitution, declaratory relief, and injunctive relief from Brandsource Inc. d/b/a/ Furniture and Mattress Warehouse ("FMW") ("Brandsource"), arising from its false and deceptive representations and omissions about so-called 0% interest purchases on its store-branded credit at retail locations that Brandsource operates, including Furniture and Mattress Warehouse.

2. Consumers are often lured into making purchases they otherwise would not make or cannot afford by retailers like Furniture and Mattress Warehouse with the promise of "0% interest" financing.

3. Under the guise of "0% interest" or "no interest" promotions, and in its quest to sell big-ticket items, Defendant Brandsource tricks consumers into applying for, accepting, and utilizing what is, in reality, deferred-interest financing that is confusing, misleading, and deceptive, and that ultimately results in the consumer being subjected to the punitive imposition of significant and previously undisclosed retroactive interest charges.

4. As a sophisticated retailer, Brandsource knows that "the availability of promotional financing is important to the consumer's decision to make purchases of 'big-ticket' items," and that it is "a driver of retailer selection."[1] In other words, Brandsource knows that its purported "0% interest" or "no interest" promotions "help sway consumer behavior."[2]

5. As Plaintiff Ruth Stinson recently learned, however, Brandsource's purported "0% interest" or "no interest" promotions are in fact nothing of the sort. Instead, they are a deferred-

---

[1] Victoria Finkle, *Deferred-Interest Promotions Are Back Under Scrutiny*, New York Times (May 3, 2016); available at https://www.nytimes.com/2016/05/04/business/dealbook/deferred-interest-promotions-are-back-under-scrutiny.html

[2] *Id.*

interest scheme, and as such, they are "'a trap for the unwary."[3] Indeed, by use of such promotions, Brandsource lures consumers, including Plaintiff, with deceptive promises of "no interest" or "0% interest" for the duration of a promotional period (e.g., 18 months), "but there is a debt time bomb at the end: Consumers who don't pay off the entire balance before the promotional period ends will be charged interest retroactively back to the date that they bought the item, even on amounts that have been paid off."[4]

6.      By way of illustration, consider a consumer who buys a $2,500 sofa from Brandsource on January 2, 2016 in connection with an offer touting "0% interest for 12 months." Even if she pays off all but $100 of the total purchase price by the end of the promotional period (i.e., January 1, 2017), she will nevertheless be charged interest on the entire $2,500 dating back a full year to January 2, 2016, the date of her initial purchase.

7.      Application of this deferred interest results in the outstanding balance on the credit account increasing dramatically. Indeed, assuming an interest rate of 24% (which is typical for store-branded credit accounts), nearly $400 in retroactive interest will be assessed and added to the consumer's balance. If she cannot pay that new balance off immediately, she then starts paying interest on top of the back interest.

8.      In essence, consumers making these purported "0% interest" or "no interest" purchases end up making interest free loans to Brandsource for several months.

9.      This is exactly what happened to Plaintiff, who fell victim to this deception, making $2820 in supposed 0% interest purchases, only to be shocked with $849 in lump-sum interest exactly one year after her purchase—despite having paid off almost half of the initial purchase amount by that time.

10.      Brandsource's promotions are "inherently unfair," as their profits depend on "trapping consumers" by "confusion," thereby "imposing a huge lump sum retroactive interest charge on those least able to handle it."[5]

---

[3] Chi Chi Wu, *Deceptive Bargain: The Hidden Time Bomb of Deferred Interest Credit Cards* (National Consumer Law Center 2015) at pg. 1.
[4] *Id.*
[5] *Id.* at 2.

11.     Specifically, Brandsource misleads and deceives consumers through the following sales tactics: (a) salespeople who receive additional compensation based on the number of customers they convince to sign up for Brandsource's store-branded credit accounts; (b) prominent in-store advertisements that tout "0% interest" while omitting reference to the assessment of retroactive interest on the full purchase price back to the date of initial purchase; and (c) a virtually instantaneous credit application and approval process, which Brandsource designed to ensure deception by providing consumers with little or no opportunity to review and consider the credit terms.

12.     In addition to the foregoing, Brandsource knows:  (a) that consumers are regularly exposed to true 0% interest promotions in the stream of commerce (which do not include retroactive assessments of interest like Brandsource's promotion); (b) that consumers do not understand that Brandsource's purported "0% interest" or "no interest" promotion is actually a deferred-interest scheme; (c) that consumers do not understand how deferred-interest works generally, or that they will be charged interest on the full purchase price retroactive to the date of purchase if they fail to pay off the entire balance during the promotional period; and (d) that consumers cannot or will not pay their balance in full by the end of the promotional period, thus becoming subject to the foregoing punitive terms requiring them to pay significant amounts of deferred or retroactive interest.

13.     In reliance on Brandsource's deceptive misrepresentations or omissions, including the fact that Brandsource omits or disguises the true terms of its so-called "0% interest" or "no interest" promotions, consumers are convinced to make purchases they otherwise would not make had they known the truth. Indeed, had Brandsource told her the truth about its so-called "0% interest" or "no interest" promotion, Plaintiff never would have made the subject purchases and/or would not have enrolled in the "0% interest or "no interest" promotion.

14.     On behalf of herself and all others similarly situated, Plaintiff brings this putative class action seeking monetary damages, restitution, declaratory relief, and injunctive relieve against Defendant Brandsource for the misleading, deceptive, and ultimately false representations and

omissions made with respect its so-called "0% interest" or "no interest" promotions, and the purchases made pursuant to those promotions with its store-branded credit at its retail locations.

## JURISDICTION AND VENUE

15.     This Court has original jurisdiction of this action under the Class Action Fairness Act of 2005. Pursuant to 28 U.S.C. §§ 1332(d)(2) and (6), this Court has original jurisdiction because the aggregate claims of the putative Class exceed $5 million, exclusive of interest and costs, and at least one of the members of the proposed classes is a citizen of a different state than Brandsource.

16.     Venue is proper in this district pursuant to 28 U.S.C. § 1391 because Brandsource is subject to personal jurisdiction here and maintains its headquarters here.

## THE PARTIES

17.     At all times material herein, Plaintiff Ruth Stinson was and is a resident and citizen of the State of Michigan.

18.     Defendant Brandsource Inc. ("Brandsource") is a California corporation with its principal place of business and headquarters located in Tustin, California.  It regularly conducts business in California, Michigan, and elsewhere. Brandsource markets furniture, appliances and electronics through more than 4,500 affiliated stores, including FMW in Holland, Michigan.

## FACTUAL ALLEGATIONS

19.     Brandsource encourages consumers to make expensive furniture purchases with promises of "0% interest" or "no interest," but only if those purchases are paid back in full within a specified period of time (usually 12 to 18 months)—a material term intentionally omitted by Brandsource's employees and in-store advertisements.

20.     If consumers fail to pay off their entire purchase balance by the end of the promotional period, they are retroactively charged interest on the entire purchase price from the date of the initial purchase. Even if a consumer falls just a few dollars short of full repayment, she is charged interest as if she had never made any payments to Brandsource.

21.     For example, if a consumer makes a $1,000 purchase from Brandsource under a 12-month "0% interest" promotion, and then pays back $900 of that purchase by the end of the 12-

month period, Brandsource still charges interest on the entire $1,000 purchase from the initial date of purchase.

22.     Thus, Brandsource's purported "0% interest" or "no interest" promotion is really nothing of the sort. Under true 0% interest promotions, "consumers are not assessed interest retroactively if the promotional balance is not paid in full by the end of the promotional period."[6] Instead, following the promotional period, "the interest rate converts to the regular rate, and the interest begins to accrue only on remaining balances."[7]

23.     In contrast, under Brandsource's deferred-interest scheme:

> [I]interest actually starts accruing from the date of purchase and will be added back on top of the remaining principal balance if the promotional balance is not paid in full by the deadline at the end of the promotional period. Given that the non-promotional interest rate on these offers is generally around 25%, the interest charge imposed as a lump sum on affected consumers can be substantial. Those who fail to pay off the balance in full, for example those with even a very small balance carried past the promotional expiration date, can end up owing much more interest than the remaining balance due.[8]

24.     Per the Consumer Financial Protection Bureau (CFPB):

> Deferred interest is a form of promotional financing typically linked to private label credit cards that consumers can use for large purchases. These offers retroactively assess and charge interest if the balance is not paid in fully by a specific date. The interest rate on these cards is often substantially higher than the rate on standard general purpose credit cards. As a result, for consumers who have available credit on a general purpose credit card and who cannot repay the entire balance during the deferred interest period, deferred interest promotions can sometimes be more expensive than revolving the same balance on their existing card.
>
> [...]
>
> . . . In contrast to the promotional rates found in the general-purpose credit card market – which often provide an interest-free period with no potential retroactive assessment of interest – deferred interest

---

[6] June 1, 2017 correspondence from CFPB Director Richard Cordray, available at https://www.consumerfinance.gov/about-us/newsroom/consumer-financial-protection-bureau-encourages-retail-credit-card-companies-consider-more-transparent-promotions/
[7] *Id.*
[8] *Id.*

CLASS ACTION COMPLAINT

products can end up costing a significant segment of vulnerable consumers a sizable amount of money.[9]

25.    As one of, if not the, largest retailers of furniture in the United States, Brandsource knows the difference between a true "0% interest" promotion and a deferred-interest promotion. Most reasonable consumers, however, do not. Indeed, per CFPB Director Richard Cordray, most consumers "do not fully understand how deferred-interest promotions operate and the manner in which interest is assessed" on purchases made in connection with such promotions,[10] including the high interest rate risk that might occur at the end of the promotional period."[11]

26.    A consumer survey conducted of 1,000 American adults during the 2017 holiday shopping season confirms the foregoing facts, noting that fully "72% of Americans considering using financing this holiday are not aware there is a costly catch to 'deferred interest' promotions on store credit cards."[12] The same survey revealed that "[o]nly 28 % of consumers correctly answered a question about how interest would be charged when presented with basic "no interest if paid in full store credit card terms."[13]

27.    Brandsource knows this, and exploits it by utilizing a deferred-interest scheme that is characterized by "a lack of transparency," and that "can harm consumers."[14] Indeed, it has been described by the National Consumer Law Center as "one of the biggest abuses that remain after the passage of the Credit Card Accountability Responsibility and Disclosures (CARD) Act of 2009."[15]

---

[9] Consumer Financial Protection Bureau, *CARD Act Report: A review of the impact of the CARD Act on the consumer credit card market* (Oct. 1, 2013) at pgs. 78, 81.
[10] June 1, 2017 correspondence from CFPB Director Richard Cordray, available at https://www.consumerfinance.gov/about-us/newsroom/consumer-financial-protection-bureau-encourages-retail-credit-card-companies-consider-more-transparent-promotions/
[11] Consumer Financial Protection Bureau, *CARD Act Report: A review of the impact of the CARD Act on the consumer credit card market* (Oct. 1, 2013) at pg. 81.
[12] Kira Brecht, *72% of people considering a no interest deal for holiday shopping don't understand how deferred interest works* (Nov. 16, 2017). Available at http://www.comparecards.com/blog/survey-holiday-shoppers-dont-understand-store-card-trap/
[13] *Id.*
[14] June 1, 2017 correspondence from CFPB Director Richard Cordray, available at https://www.consumerfinance.gov/about-us/newsroom/consumer-financial-protection-bureau-encourages-retail-credit-card-companies-consider-more-transparent-promotions/
[15] Chi Chi Wu, *Deceptive Bargain: The Hidden Time Bomb of Deferred Interest Credit Cards* (National Consumer Law Center 2015) at pg. 2.

28.     Reasonable consumers like Plaintiff are routinely deceived by Brandsource's misleading, deceptive, unfair and unconscionable representations and omissions relative to its purported "0% interest" or "no interest" promotions.

29.     Brandsource knows that reasonable consumers do not appreciate the difference between true "0% interest" promotions and deferred-interest promotions, and it also knows that many consumers will not pay off the entire balance of their deferred-interest purchases before the end of the promotional period, thereby becoming subject to retroactive interest assessments. Indeed, according to the CFPP, "only 56.9% of consumers with [credit] scores below 660 successfully paid off their balance at the end of the promotional period,"[16] and "more than a third of people with both promotional and other types of purchases who are assessed deferred interest pay in excess of 150% of their promotional balance during that period."[17]

30.     Brandsource exploits the foregoing lack of transparency and consumers' corresponding lack of understanding by advertising and marketing its promotions using the phrases "0% interest" or "no interest" to mislead, confuse, and deceive consumers into believing they are signing up for a true "0% interest" offer, which they are not. Brandsource then rushes consumers through a virtually instantaneous credit application and approval process, which has been designed to ensure they do not discover the true terms of the promotion; i.e., that should they fail to pay off the entire balance of the purchase price by the end of the promotional period, they will be charged interest on said full purchase price retroactively to the date of the initial purchase some 12 to 18 months prior.

31.     In its retail stores, FMW provides written and verbal communications in-store that state:

> **12 Months.  0 Down.  0% Interest.**
> **Furniture Warehouse Offers Great Financing Options!**
> **Take your furniture today while paying for it later.**
> **You'll enjoy the following benefits:**
> **12 Months No Interest Options**
> **0 Down**
> **0% Interest**

---

[16] Consumer Financial Protection Bureau, *CARD Act Report: A review of the impact of the CARD Act on the consumer credit card market* (Oct. 1, 2013) at pg. 80.

[17] June 1, 2017 correspondence from CFPB Director Richard Cordray, *supra*, note 14.

**Easy Application Process**
**Hassle Free**
**Convenient Monthly Payments**

32.     FMW's in-store marketing never informs consumers that retroactive interest applies at all, much less to the <u>entire purchase</u>—even for those parts of the purchase that have been repaid.

33.     Just as bad, FMW never tells consumers that if they fail to pay the promotional balance in full, they will be making an interest-free loan to FMW.

34.     These marketing representations are false.   These are not "0% interest" purchases. They are extremely high interest rate purchases unless certain conditions are met—and FMW knows full well that the majority of consumers do not meet those conditions.

35.     FMW does not inform consumers that interest will be retroactively applied on the entire purchase price at the end of the promotional period, as opposed to just the remaining balance. By reason of the foregoing representations or omissions, Brandsource's disclosures are incomplete, confusing, misleading, deceptive, and ultimately false. Indeed, the most reasonable way to read Brandsource's foregoing disclosure is that interest is not imposed during the promotional period, and that upon the expiration thereof, it is retroactively imposed only on the remaining unpaid balance. For example, if a consumer makes a $1,000 purchase and pays off $800, that the accrued deferred interest would apply only for the remaining $200.

36.     Having piqued consumers' interest with displays prominently touting "0% interest" or "no interest," Brandsource then subjects consumers to sales associates who, upon information and belief, receive additional compensation for convincing them to sign up for its promotional credit offers, and who thus pressure them to do so. Brandsource associates do not inform consumers they are signing up for a deferred-interest promotion – as opposed to the true "0% interest" promotion Brandsource has promised – and they rush consumers through an application process that takes mere minutes and is designed to ensure they have no meaningful opportunity to review or understand the written terms of the promotion, which likewise fail to inform consumers that retroactive interest will be charged on the entire purchase price if the balance is not paid off before the end of the promotional period.

37.     The applications are almost always instantly approved, whereupon purchases are immediately added to the balance of the newly-opened account. Brandsource designed this simultaneous application/approval/purchase sequence to ensure that consumers rely on its misleading promises of "0% interest" or "no interest," and to further ensure that they have no meaningful opportunity to review or understand the terms of the credit for which they are signing up.

## **PLAINTIFF'S DISCOVERY OF BRANDSOURCE'S SCHEME**

38.     Plaintiff first heard about the supposed 0% interest promotion when she was shopping at FMW on September 26, 2015 and a salesperson told her about the promotion.

39.     Plaintiff was informed that if she qualified, she would receive 12 months with no interest on her purchase.

40.     On that same visit, on the urging of the salesperson, Plaintiff applied for the store-offered credit, was approved within seconds, and made a purchase in the amount of $1506.50.

41.     She would not have made that purchase if she had been informed about the true nature of the supposed 0% interest promotion.

42.     Excited by the prospect of that promotion, she returned on October 16, 2015 and made an additional purchase in the amount of $1312.52.

43.     She would not have made that purchase if she had been informed about the true nature of the promotion.

44.     Plaintiff was hit with **$850 dollars in interest charges on a $2800 in furniture purchases—even though she had made all required payments on time and had paid off over $1,000 of her balance at that time**.  She would not have entered into such a purchase if the in-store marketing had told her of this massive penalty for failure to pay off in full.

45.     The Brandsource salesperson informed Plaintiff that if she qualified, she would receive 18 months with no interest on her purchase.  She believed this was true. The Brandsource salesperson never informed Plaintiff that if she failed to pay off the entire balance of the account before the end of the 12 month promotional period she would be required to pay interest on the entire purchase price retroactive to the initial date of purchase.

46.     On that same visit, at the urging of the Brandsource salesperson, and in reliance on Brandsource's representation that she would be charged no interest on her purchase for a period of 12 months, Plaintiff applied for the store branded-offered credit.

47.     The application process took approximately 5 minutes, and Plaintiff's application was approved within seconds.

48.     At no time prior to the sale being finalized and the purchase being price added to her newly-opened account did the Brandsource sales person: (a) explain the difference between a true "0% interest" or "no interest" promotion and a deferred-interest promotion; (b) inform Plaintiff that Brandsource's promotion was not a true "0% interest" or "no interest" promotion; (c) inform Plaintiff that if she failed to pay off the entire balance of her purchase by the end of the 12 month promotional she would be assessed interest on the full purchase price back to the initial date of purchase; (d) provide Plaintiff with a written copy of the full credit terms; or (e) offer Plaintiff the chance to review an electronic copy of the full credit terms.

49.     Had Brandsource informed her about the true nature of its purported "0% interest" or "no interest" promotion, Plaintiff would not have made the subject purchase and/or would not have enrolled in the "0% interest" promotion.

50.     Despite making timely payments and paying off a significant portion of the initial purchase price during the promotional period, Plaintiff was unable to pay off the entire balance, and was hit with over $800 dollars in retroactive interest when it expired.

## CLASS ALLEGATIONS

51.     Plaintiff brings this action on behalf of herself and all others similarly situated pursuant to Fed. R. Civ. P. 23(a), (b)(2), and (b)(3). This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of Rule 23.

52.     The proposed classes ("Classes") are defined as:

> All persons in the United States who, within the applicable statute of limitations preceding the filing of this action through class certification, made purchases on Brandsource store-issued credit and were later charged retroactive, lump-sum interest on the full purchase amount.
>
> (the "National Class"); and

All persons in the State of Michigan who, within the applicable statute of limitations preceding the filing of this action through class certification, made purchases on Brandsource store-issued credit and were later charged retroactive, lump-sum interest on the full purchase amount.

(the Michigan Subclass).

The National Class and the Michigan State Subclass are collectively referred to as the "Classes."

53. Plaintiff reserves the right to modify or amend the definition of the proposed Classes before the Court determines whether certification is appropriate.

54. Excluded from the Classes are Brandsource, its parents, subsidiaries, affiliates, officers and directors, any entity in which Brandsource has a controlling interest, all customers who make a timely election to be excluded, governmental entities, and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

55. Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of her claims on a class-wide basis using the same evidence as individual Class members would use to prove those elements in individual actions alleging the same claims.

56. <u>Numerosity; Rule 23(a)(1)</u>: The members of the Classes are so numerous that joinder is impractical. The Classes consist of many thousands of members, the identities of whom are within the knowledge of and can be ascertained only by resort to Brandsource's records.

57. The claims of the representative Plaintiff are typical of the claims of the Classes in that the representative Plaintiff, like all Class members, received store credit and has been damaged by Brandsource's misconduct in that they have been harmed by the same deceptive, misleading, and/or fraudulent representations, omissions, pretenses, and practices. Furthermore, the factual basis of Brandsource's misconduct is common to all Class members, and represents a common thread of unfair and unconscionable conduct resulting in injury to all members of the Classes.

58. <u>Predominance; Rule 23(a)(2)</u>: There are numerous questions of law and fact common to the Classes and those common questions predominate over any questions affecting only individual Class members.

59. Among the questions of law and fact common to the Classes are whether Brandsource:

    a.    Unlawfully, falsely, deceptively, or misleadingly represented that purchases would be under a 0% interest promotion, when that was not actually the case;

    b.    Unlawfully, falsely, deceptively, or misleadingly induced Class members into making purchases on store credit based on misrepresentations, omissions, or false promises;

    c.    Wrongfully omitted that the 0% promotion would result in the assessment of significant amounts of retroactive interest;

    d.    To the extent applicable, whether and how long Brandsource fraudulently concealed its past and ongoing wrongful conduct from Plaintiff and other members of the Classes;

    e.    Was unjustly enriched through its conduct; and

    f.    Violated consumer protection and other state laws.

60. Other questions of law and fact common to the Classes include:

    a.    The proper method or methods by which to measure damages; and

    b.    The declaratory and injunctive relief to which the Classes are entitled.

61. <u>Typicality; Rule 23(a)(3)</u>: Plaintiff's claims are typical of the claims of other Class members, in that they arise out of the same wrongful conduct and the same or substantially similar unconscionable conduct by Brandsource. Plaintiff has suffered the harm alleged and has no interests antagonistic to the interests of any other Class member.

62. There are no defenses available to Defendant that are unique to Plaintiff.

63. <u>Adequacy of Representation; Rule 23(a)(4)</u>: Plaintiff is committed to the vigorous prosecution of this action and has retained competent counsel experienced in the prosecution of class actions generally, and, in particular, class actions on behalf of consumers. Accordingly, Plaintiff is an adequate representative and will fairly and adequately protect the interests of the Classes.

64. <u>Superiority; Rule 23(b)(3)</u>: A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Since the amount of each individual Class

member's claim is small relative to the complexity of the litigation, and due to the financial resources of Brandsource, no Class member could afford to seek legal redress individually for the claims alleged herein. Therefore, absent a class action, the Class members will continue to suffer losses and Brandsource's misconduct will proceed without remedy.

65. Even if Class members themselves could afford such individual litigation, the court system could not. Individualized litigation would significantly increase the delay and expense to all parties and to the Court. Individualized litigation would also create the potential for inconsistent or contradictory rulings. By contrast, a class action presents far fewer management difficulties, allows claims to be heard which might otherwise go unheard because of the relative expense of bringing individual lawsuits, and provides the benefits of adjudication, economies of scale and comprehensive supervision by a single court.

**FIRST CLAIM FOR RELIEF**
**Fraud and Fraudulent Inducement**
(On Behalf of the National Class)

66. Plaintiff repeats the preceding paragraphs as if set forth fully herein.

67. Brandsource affirmatively misrepresented and/or did not disclose sufficient facts to render non-misleading its statements about the "0% interest" or "no interest" promotion offered in connection with its promotion of its store credit. These misrepresentations or omissions include, *inter alia*, that its purported "0% interest" or "no interest" promotion was in fact a deferred-interest scheme, that the purported "0% interest" or "no interest" promotion would result in retroactive interest fees being assessed against the consumer.

68. Brandsource knew, or reasonably should have known, that its representations alleged herein were materially false or misleading, or that omission of material facts rendered such representations false or misleading. Brandsource also knew, or had reason to know, that its misrepresentations and omissions would induce Class members to use store credit to make purchases they otherwise would not make.

69. Brandsource's misrepresentations or omissions were material and were a substantial factor in Plaintiff and Class members' using store credit to make purchases they otherwise would not make.

70. Brandsource intended its misrepresentations or omissions to induce Plaintiff and Class members to use store credit to make purchases they otherwise would not, or had reckless disregard for same.

71. But for these misrepresentations or omissions, Plaintiff and the Class members would not have used store credit to make purchases they otherwise would not make.

72. Plaintiff and Class members were justified in relying on Brandsource's misrepresentations or omissions. The same or substantively identical misrepresentations were communicated, and/or the same or substantively identical omissions were not communicated, to each Class member, including through promotional materials prepared and disseminated by Brandsource.

73. Plaintiff and Class members were damaged as a direct and proximate result of Brandsource's misrepresentations or omissions alleged herein.

## SECOND CLAIM FOR RELIEF

### Negligent Misrepresentation or Omission
(On Behalf of the National Class)

74. Plaintiff repeats the preceding paragraphs as if set forth fully herein.

75. Brandsource had or undertook a duty to accurately and truthfully represent to consumers the truth regarding Brandsource's statements about its purported "0% interest" or "no interest" promotions.

76. Brandsource failed to exercise ordinary care in making representations concerning its "0% interest" or "no interest" promotions.

77. Brandsource negligently misrepresented or omitted the true facts of its "0% interest" or "no interest" promotions.

78. Brandsource's statements were false at the time the misrepresentations were made (or the omissions were not made).

79. Brandsource knew, or reasonably should have known, that its representations alleged herein were materially false or misleading, or that its omission of material facts rendered such representations false or misleading. Brandsource also knew, or had reason to know, that its

misrepresentations and omissions would induce Class members to use store credit to make purchases they otherwise would not make.

80.     As a direct and proximate result of Brandsource's acts and omissions described herein, Plaintiff and putative Class members have suffered harm, and will continue to do so.

81.     Brandsource's misrepresentations or omissions were material and were a substantial factor in Plaintiff and Class members using store credit to make purchases they otherwise would not make.

82.     Brandsource induced Plaintiff and Class members to use store credit to make purchases they otherwise would not make, or had reckless disregard for same.

83.     But for these misrepresentations or omissions, Plaintiff and Class members would not have used store credit to make purchases they otherwise would not make.

84.     Plaintiff and Class members were justified in relying on Brandsource's misrepresentations and omissions. The same or substantively identical misrepresentations were communicated, and/or the same or substantively identical omissions were not communicated, to each Class member, including through promotional materials prepared and disseminated by Brandsource.

85.     Plaintiff and Class members were damaged as a direct and proximate result of Brandsource's misrepresentations or omissions alleged herein.

## THIRD CLAIM FOR RELIEF
### Michigan Consumer Protection Act, Michigan Comp. Laws Ann. § 445.903 *et seq.*
(On Behalf of the Michigan Sub-class)

86.     Plaintiff repeats the preceding paragraphs as if set forth fully herein.

87.     Plaintiff brings this Claim for violation of the Michigan Consumer Protection Act (MCPA) on behalf of the Michigan Sub-class.

88.     The MCPA applies to all claims of the members of the Subclass because the conduct which constitutes violations of the code occurred within the state of Michigan.

89.     Under the MCPA, "person" means "a natural person, corporation, limited liability company, trust, partnership, incorporated or unincorporated association, or other legal entity." Mich. Comp. Laws Ann. § 445.902(1)(d).

90. Plaintiff and Brandsource are "persons" under the MCPA.

91. Under the MCPA "trade or commerce" means "the conduct of a business providing goods, property, or service primarily for personal, family, or household purposes and includes the advertising, solicitation, offering for sale or rent, sale, lease or distribution of a service or property, tangible or intangible, real, personal, or mixed, or any other article, or a business opportunity." Mich. Comp. Laws Ann. § 445.902(1)(h).

92. At all times material herein, and in connection with events described, Brandsource was engaged in "trade or commerce" under the MCPA. Brandsource's conduct, actions, misrepresentations, and omissions have violated, and continue to violate, the MCPA because they have occurred in the course of Brandsource's conduct of "trade or commerce."

93. Under the MCPA; specifically Mich. Comp. Laws § 445.903, the use of "[u]nfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce are unlawful and are defined as follows:"

> (e) Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another.
>
> ***
>
> (g) Advertising or representing goods or services with intent not to dispose of those goods or services as advertised or represented.
>
> ***
>
> (n) Causing a probability of confusion as to the legal rights, obligations, or remedies of a party to a transaction.
>
> (o) Causing a probability of confusion or of misunderstanding as to the terms or conditions of credit if credit is extended in a transaction.
>
> ***
>
> (s) Failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer.
>
> ***
>
> (w) Representing that a consumer will receive a rebate, discount, or other benefit as an inducement for entering into a transaction, if the

benefit is contingent on an event to occur subject to the consummation of the transaction.

***

(y) Gross discrepancies between the oral representations of the seller and the written agreement covering the same transaction or failure of the other party to the transaction to provide the promised benefits.

***

(aa) Causing coercion and duress as the result of the time and nature of a sales presentation.

(bb) Making a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is.

(cc) Failing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner.

94.     Brandsource's conduct in making confusing, misleading, deceptive or false representations or omissions with respect to its purported "0% interest" or "no interest" promotions, as set forth at length in the preceding paragraphs, constitutes the use of "[u]nfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce" in violation of the foregoing sections of the MCPA.

95.     As detailed at length in the preceding paragraphs, Plaintiff and members of the Michigan Sub-class relied, or may be presumed to have relied, upon Brandsource's representations or omissions with respect to its purported "0% interest" or "no interest" promotions.

96.     As set forth at length in the preceding paragraphs, Brandsource intended that Plaintiff and the members of the Michigan Sub-class would rely on its representations or omissions with respect to its purported "0% interest" or "no interest" promotions.

97.     Plaintiffs and members of the Michigan Sub-class were entitled to know that Brandsource's purported "0% interest" or "no interest" promotion was a sham.

98.     Had Brandsource told the truth about its so-called "0% interest" or "no interest" promotion, Plaintiff and the members of the Michigan Sub-class never would have made the

purchases they made in connection with those promotions and/or would not have enrolled in the "0% interest" promotion.

99. Plaintiff and members of the Subclass have been injured and have suffered loss of money or property as a direct and proximate result of Brandsource's utilization of "[u]nfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce" in violation of the MCPA, as detailed at length in the preceding paragraphs.

100. Members of the Subclass may be presumed to have relied upon the representation that they would be charged 0% interest.

## FOURTH CLAIM FOR RELIEF

### Unjust Enrichment
(On Behalf of the National Class)

101. Plaintiff repeats the preceding paragraphs as if set forth fully herein.

102. By means of Brandsource's wrongful conduct as detailed at length in the preceding paragraphs, Brandsource knowingly induced Plaintiff and members of the National Class to apply for and use its purported "0% interest" or "no interest" credit offer by fraudulent, unfair, deceptive, unconscionable, and/or oppressive means.

103. Brandsource knowingly and wrongfully received and retained benefits from Plaintiff and members of the National Class. In so doing, Brandsource acted intentionally or with conscious disregard for the rights of Plaintiff and members of the National Class.

104. As a direct and proximate result of Brandsource's wrongful conduct as detailed at length in the preceding paragraphs, Brandsource has been unjustly enriched at the expense, and to the detriment, of Plaintiff and members of the National Class.

105. Brandsource's unjust enrichment is traceable to, and resulted directly and proximately from, its wrongful conduct detailed at length in the preceding paragraphs.

106. It is unfair and inequitable for Brandsource to be permitted to retain the benefits it received, and is still receiving, without justification, from the wrongful conduct alleged herein. Brandsource's retention of such benefits under the circumstances is inequitable.

107. The financial benefits derived by Brandsource rightfully belong to Plaintiff and members of the National Class, in whole or in part. Brandsource should be compelled to account

for and disgorge in a common fund for the benefit of Plaintiff and members of the National Class all wrongful or inequitable proceeds received from them. A constructive trust should be imposed upon all wrongful or inequitable sums received by Brandsource traceable to Plaintiff and the members of the National Class.

108.    Plaintiff and members of the National Class have no adequate remedy at law.

### FIFTH CLAIM FOR RELIEF

**Violation of the "Unfair" Prong of the UCL**
(On Behalf of the National Class)

109.    Plaintiff incorporates and realleges by reference each and every allegation contained in paragraphs 1-111 as if fully set forth herein.

110.    The UCL defines unfair business competition to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising. Cal. Bus. & Pro. Code § 17200.

111.    A business act or practice is "unfair" under the UCL if the reasons, justifications and motives of the alleged wrongdoer are outweighed by the gravity of the harm to the alleged victims. Brandsource has violated the "unfair" prong of the UCL by engaging in the conduct described herein.

112.    The gravity of the harm to members of the Class resulting from these unfair acts and practices outweighs any conceivable reasons, justifications and/or motives of Brandsource for engaging in such deceptive acts and practices.  By committing the acts and practices alleged above, Brandsource engages in unfair business practices within the meaning of California Business & Professions Code § 17200, *et seq*.

113.    Through its unfair acts and practices, Brandsource has improperly obtained money from Plaintiff and the Class.  As such, Plaintiff requests that this court cause Brandsource to restore this money to Plaintiff and all Class members, and to enjoin Brandsource from continuing to violate the UCL as discussed herein and/or from violating the UCL in the future. Otherwise, Plaintiff and the Classes may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

### SIXTH CLAIM FOR RELIEF

**Violation of the "Fraudulent" Prong of the UCL**

114.     Plaintiff incorporates and realleges by reference each and every allegation contained in paragraphs 1-111 as if fully set forth herein.

115.     The UCL defines unfair business competition to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising. Cal. Bus. & Pro. Code § 17200.

116.     A business act or practice is "fraudulent" under the UCL if it is likely to deceive members of the consuming public.

117.     Brandsource's Agreement and advertising materials regarding the Brandsource Debit Card are fraudulent within the meaning of the UCL because they deceived Plaintiff and reasonable consumers like her on the true nature of the 0% interest promotion.

118.     Brandsource's acts and practices as described herein have deceived Plaintiff and are highly likely to deceive reasonable members of the consuming public.  Plaintiff relied on Brandsource's misleading and deceptive representations, and would not have used store credit to make purchases had she known that the truth regarding the 0% interest promotion.  Plaintiff suffered monetary loss as a direct result of Brandsource's practices described herein.

119.     As a result of the conduct described above, Brandsource has been unjustly enriched at the expense of Plaintiff and members of the proposed Class.  Specifically, Brandsource has been unjustly enriched by obtaining revenues and profits that it would not otherwise have obtained absent its false, misleading and deceptive conduct.

120.     Through its fraudulent acts and practices, Brandsource has improperly obtained money from Plaintiff and the Class.  As such, Plaintiff requests that this court cause Brandsource to restore this money to Plaintiff and all Class members, and to enjoin Brandsource from continuing to violate the UCL as discussed herein and/or from violating the UCL in the future. Otherwise, Plaintiff and the Classes may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

## SEVENTH CLAIM FOR RELIEF

### Violation of the "Unlawful" Prong of the UCL
(On Behalf of the National Class)

121.    Plaintiff incorporates and realleges by reference each and every allegation contained in paragraphs 1-111 as if fully set forth herein.

122.    The UCL defines unfair business competition to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising. Cal. Bus. & Pro. Code § 17200.

123.    Brandsource's practices relating to the imposition of RPFs violate California Civil Code sections 1770(a)(5), (14) and (1), and, as a result, constitute unlawful business acts or practices within the meaning of the UCL.

124.    As a result of the conduct described above, Brandsource has been unjustly enriched at the expense of Plaintiff and members of the proposed Class.  Specifically, Brandsource has been unjustly enriched by obtaining revenues and profits that it would not otherwise have obtained absent its false, misleading and deceptive conduct.

125.    Through its unlawful acts and practices, Brandsource has improperly obtained money from Plaintiff and the Class. As such, Plaintiff requests that this court cause Brandsource to restore this money to Plaintiff and all Class members, and to enjoin Brandsource from continuing to violate the UCL as discussed herein and/or from violating the UCL in the future. Otherwise, Plaintiff and the Classes may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

## EIGHTH CLAIM FOR RELIEF

**Violation of the Consumers Legal Remedies Act,
California Civil Code Section 1750, *et seq.)***
(On Behalf of the National Class)

126.    Plaintiff incorporates and realleges by reference each and every allegation contained in paragraphs 1-111 as if fully set forth herein.

127.    Plaintiff and each member of the proposed class are "consumers" within the meaning of California Civil Code § 1761(d) and 1770.

128.    Brandsource's provision of Brandsource Debit Cards were "transactions" within the meaning of Cal. Civ. Code § 1761(e).

129.    The Brandsource Debit Cards use by Plaintiff and the Class are "services" within the meaning of California Civil Code §1761(a), (b) and 1770.

130. As described herein, Brandsource violated the CLRA by making deceptive representations in connection with the services in question (1770(a)(5)); by representing that their services have characteristics which they do not have (1770)(a)(5) and (14)); by inserting an unconscionable provision in a contract (1770)(a)(19).

131. Plaintiff relied on Brandsource's false representations.

132. Pursuant to Cal. Civ. Code § 1780(a), counsel for Plaintiff provided proper notice of their intent to pursue claims under the CLRA and an opportunity to cure to Defendant via certified mail. A copy of that letter is attached as Exhibit 1.

133. Plaintiff requests this Court enjoin Defendant from continuing to violate the CLRA as alleged here in the future. Otherwise, Plaintiff, the Class and members of the general public may be irreparable harmed and/or denied effective and complete remedy if such an order is not granted.

134. In addition, Plaintiff and the Class have been damaged by Brandsource's illegal and deceptive conduct as described herein. Plaintiff and the Class therefore request damages under the CLRA.

135. Plaintiff's affidavit stating facts showing that venue in this District is proper pursuant to Cal. Civ. Code § 1780(c) is attached hereto as Exhibit 2.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff and the Classes demand a jury trial on all claims so triable and judgment as follows:

1. Declaring Brandsource's conduct alleged herein to be fraudulent, deceptive, wrongful, unfair, inequitable, and unconscionable;

2. Restitution owing to Plaintiff and the Classes as a result of the wrongs alleged herein in an amount to be determined at trial;

3. An accounting and disgorgement of the ill-gotten gains derived by Brandsource's misconduct;

4. Actual damages in an amount according to proof;

5.     An injunction enjoining Brandsource from engaging in the same wrongful conduct going forward including requiring Brandsource to adequately disclose facts to render truthful its representations;

6.     Statutory, punitive and exemplary damages;

7.     Pre-judgment and post-judgment interest at the maximum rate permitted by applicable law;

8.     Costs and disbursements assessed by Plaintiff in connection with this action, including reasonable attorneys' fees; and

9.     Such other relief as this Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury on all claims so triable.

Dated: March 19, 2018                    Respectfully submitted,

/s/ Jeffrey D. Kaliel
Jeffrey D. Kaliel (CA Bar No. 238293)
Sophia Goren Gold  (CA Bar No. 307971)
**KALIEL PLLC**
1875 Connecticut Ave., NW, 10th Floor
Washington, D.C.  20009
(202) 350-4783
*jkaliel@kalielpllc.com*
*sgold@kalielpllc.com*

**KOPELOWITZ OSTROW**
**FERGUSON WEISELBERG GILBERT**
Jeff Ostrow (*pro hac vice* to be filed)
ostrow@kolawyers.com
Scott Edelsberg (*pro hac vice* to be filed)
edelsberg@kolawyers.com
One West Las Olas Blvd., Suite 500
Fort Lauderdale, Florida 33301
Telephone: (954) 525-4100

*Attorneys for Plaintiff*